UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

      Plaintiff,

                                Case No. 92-81127

v.                              Hon. David M. Lawson

Edward Dale, John Gordon, Gene
Polk, and Gregory Brown,

      Defendants.

_____/

**Sentence Modification Proceeding Memorandum**

# Contents

Introduction ........................................................................................1

Facts ....................................................................................................2

   A.  The defendants commit murder to further their drug-
      trafficking enterprise. ...............................................................2

   B.  The defendants are sentenced to concurrent life terms. ..............4

   C.  The defendants move to reduce their sentences. .........................6

   D.  The Court rules on eligibility under Section 404........................8

Argument ............................................................................................9

   A.  There is discretion to grant relief under Section 404 on
      some, but not all, counts. ..........................................................9

   B.  The guideline ranges and § 3553(a) factors weigh
      strongly against any sentence reductions. ................................14

      1.   The benchmark guidelines are still life
          imprisonment...................................................................15

      2.   Intervening changes in law do not support relief. ...............15

          Gregory Brown...............................................................17

          Edward Dale ..................................................................17

          John Gordon...................................................................18

          Gene Polk ......................................................................18

      3.   There are no unwarranted sentencing disparities. .............20

      4.   Individual considerations under § 3553(a) do not
          warrant any sentence reduction. ......................................21

          Gregory Brown...............................................................21

          Edward Dale ..................................................................22

          John Gordon...................................................................23

          Gene Polk ......................................................................24

Conclusion..........................................................................................25

## Introduction

The defendants here played significant roles in the murderous drug-trafficking gang known as the Best Friends. Each was convicted of a dual-object drug conspiracy involving crack and powder cocaine and at least one homicide under 21 U.S.C. § 848(e). All are serving concurrent life sentences for those crimes, plus consecutive terms for their § 924(c) offenses. Appropriately so. Combined, they bear responsibility for at least seven murders, all carried out to further the gang's interests in distributing drugs on a massive scale in Detroit and many other cities. Although the law has changed in certain respects since their original sentencings, the irreparable harm caused by their crimes has not.

At the upcoming sentence-modification hearings, the Court must decide, with respect to each defendant, whether to reduce one or more of his sentences under Section 404 of the First Step Act and, if so, by how much. Those determinations depend on both eligibility and the sentencing factors under 18 U.S.C. § 3553(a). For the reasons below, the defendants are eligible for a reduced sentence only for their covered drug conspiracy, not for their homicides or § 924(c) offenses, and the § 3553(a) factors weigh against any reduction.

## Facts

**A.    The defendants commit murder to further their drug-trafficking enterprise.**

For over a decade, the Best Friends gang was one of the largest crack and powder cocaine distributors in Detroit. (Gordon PSR ¶ 8). Its operations eventually extended to nine other states, with locations sometimes shifting to avoid federal investigation. (Gordon PSR ¶¶ 8, 17–18, 23). Known for their ruthless killings, members were expected to protect the gang's territory and eliminate competition with contract murders and drive-by shootings. (Gordon PSR ¶ 9). They were also expected to use murder as retribution against those who failed to repay their drug debts. (Gordon PSR ¶ 9).

Consistent with those expectations, the defendants here, as distributors and enforcers of the Best Friends, were willing to murder to promote the gang's interests. (Gordon PSR ¶¶ 9, 14). Together, they are responsible for at least seven homicides between 1991 and 1993.

Gregory Brown aided and abetted in the murder of Walter Daniels. (Brown PSR ¶ 28). After spotting Daniels going into a store, Brown, while armed, entered the store and then followed Daniels outside, at which point his cohort carried out the execution by shooting

2

Daniels 16 times. (Brown PSR ¶ 28). The participants were reportedly paid $20,000 for the killing. (Brown PSR ¶ 28; Dale PSR ¶ 22).

Edward Dale shot and killed Al Foster, whom the Best Friends suspected was cooperating with authorities. (Dale PSR ¶ 20). A few months later, Dale shot and killed Michael Mitchell, a rival drug dealer, and shared in the murder payment of $30,000 and a kilogram of cocaine. (Dale PSR ¶ 21). A month after that, Dale murdered Walter Daniels by shooting him 16 times and shared in the murder payment of $20,000. (Dale PSR ¶ 22). On top of that, after a group of Best Friends murdered Terrence Brown, the gang's leader, Dale helped by removing the body and destroying the evidence, and he obtained part of the $600,000 that the victim had with him. (Gordon PSR ¶ 22).

John Gordon shot and killed Dwight Farrell, who was lured to a used car lot. (Gordon PSR ¶ 27). Two other people in the car lot were also wounded. (Gordon PSR ¶ 27). Gordon tried to kill Michael Mitchell, whom Dale murdered, and at least one witness identified Gordon as a triggerman in the shooting death of Daniels. (Gordon PSR ¶¶ 28–29).

Gene Polk and another gang member shot and killed Bernard Lamar, a rival drug dealer. (Polk PSR ¶ 22). Within weeks of that

3

killing, Polk murdered William Miles outside his home in Detroit, an incident that involved a police shoot-out from which Polk managed to escape. (Polk PSR ¶ 23). Polk later shot and killed George Mason before tossing the murder weapon into a river. (Polk PSR ¶ 24). Finally, Polk and another gang member killed Sidney Edwards, a witness to Bernard Lamar's murder, with Polk "finish[ing] the job." (Polk PSR ¶ 25).

All four of these defendants were tried by a jury. Brown was convicted of the drug conspiracy, one intentional killing under § 848(e), and one § 924(c) offense. (Brown PSR ¶¶ 1–3, 8). Dale was convicted of a dual-object drug conspiracy involving powder and crack cocaine, three intentional killings under 21 U.S.C. § 848(e), and two § 924(c) offenses. (Dale PSR ¶¶ 1, 3). Gordon was convicted of the drug conspiracy, one intentional killing under § 848(e), and one § 924(c) offense. (Gordon PSR ¶¶ 1, 6). Polk was convicted of the drug conspiracy, three intentional killings under § 848(e), and three § 924(c) offenses. (Polk PSR ¶¶ 1, 5).

## B.   The defendants are sentenced to concurrent life terms.

Although the drug quantities attributable to each defendant varied, the offense level for all four men hinged on the guideline for first-degree murder, which yielded a base offense level of 43 for the drug

4

conspiracy and each homicide. Because those offenses did not group, each was assigned its own unit, and each defendant's offense level was increased by the number of units to arrive at an adjusted offense level, though that had no consequence because 43 is the highest offense level. And although their criminal histories also varied, the seriousness of the offense conduct meant that the guideline range in all four cases was life, plus consecutive terms under § 924(c).

As then mandated, Judge Cohn imposed guideline sentences:

Brown: two concurrent life terms (drug conspiracy and one homicide) plus 5 years (one § 924(c) offense)

Dale: four concurrent life terms (drug conspiracy and three homicides) plus 25 years (two § 924(c) offenses)

Gordon: two concurrent life terms (drug conspiracy and one homicide) plus 5 years (one § 924(c) offense)

Polk: four concurrent life terms (drug conspiracy and three homicides) plus 45 years (three § 924(c) offenses)

The Sixth Circuit affirmed those sentences on direct appeal. *United States v. Polk*, 1999 WL 397922 (6th Cir. Jun. 2, 1999); *United States v. Brown*, 2000 WL 876382 (6th Cir. 2000).

## C.     The defendants move to reduce their sentences.

A variety of post-conviction litigation ensued. In 2019, each

defendant moved under Section 404 of the First Step Act, which allows

a prisoner to seek a sentence reduction if they were convicted of a

"covered offense," the penalties for which were modified by the Fair

Sentencing Act of 2010. Judge Cohn denied relief for Gordon and Brown

but did not rule as to Polk or Dale. (ECF No. 2372, Order Denying

Gordon Motion, PgID.17570; ECF 2386, Order Denying Brown Motion,

PgID.17663). Gordon appealed, and Brown moved to reconsider.

In 2020, with his Section 404 appeal pending, Gordon sought

compassionate release. (ECF No. 2396, Motion for Compassionate

Release, 17747). The Court denied relief, concluding that, regardless of

eligibility, the § 3553(a) factors counseled against a sentence reduction.

(ECF No. 2425, Order Denying Compassionate Release, PgID.19000).

The Court described Gordon's crimes as "perhaps the most serious

known to the law," and their serious nature was not diminished by his

health problems or the passage of time. (ECF No. 2425, Order Denying

Compassionate Release, PgID.18996–97). The Court found Gordon's

prison conduct "commendable" but also "unremarkable," and his life

sentences were "not greater than necessary to achieve congressional goals" of sentencing. (ECF No. 2425, Order Denying Compassionate Release, PgID.18997). Gordon again appealed.

In January 2021, the Sixth Circuit decided Gordon's first appeal concerning Section 404. It held that, although homicide under § 848(e) is not a covered offense, *United States v. Snow*, 967 F.3d 563, 564 (6th Cir. 2020), Gordon is "eligible for a sentence reduction . . . on Count 1," the drug conspiracy. (ECF No. 2455, Sixth Circuit Order in *United States v. Gordon*, No. 19-1739 (6th Cir. Jan. 14, 2021), PgID.19474). The panel's limited remand order reflects its narrow ruling: "[W]e VACATE, only as to Count 1, the district court's order denying Gordon's motion for a sentence reduction under the First Step Act and REMAND for further proceedings." (ECF No. 2455, Sixth Circuit Order in *United States v. Gordon*, No. 19-1739 (6th Cir. Jan. 14, 2021), PgID.19475).

In October 2021, the Sixth Circuit affirmed in Gordon's second appeal. It found no abuse of discretion in the Court's conclusion "that the seriousness of Gordon's offenses—which included murder and a massive drug conspiracy—and the need to promote respect for the law and adequately deter criminal conduct . . . supported denying his

7

motion." (ECF No. 2486, Sixth Circuit Order in *United States v. Gordon*, No. 20-2225 (6th Cir. Oct. 4, 2021), PgID.20052).

Meanwhile, Brown and Dale also moved for compassionate release, both unsuccessfully. (ECF No. 2471, Brown Motion, PgID.19577; ECF No. 2472, Dale Motion, PgID.19627). Dale failed to establish extraordinary and compelling reasons, and shortening his sentence was not justified given the seriousness of his crimes and the goals of sentencing. (ECF No. 2514, Order Denying Compassionate Release, PgID.20182–83). Brown also failed to present extraordinary and compelling reasons and was denied relief on that basis alone. (ECF No. 2541, Order Denying Compassionate Release, PgID.20538–40).

**D.    The Court rules on eligibility under Section 404.**

In July 2022, the Court issued its ruling concerning eligibility for relief under Section 404 of the First Step Act. (ECF No. 2541, Eligibility Order, PgID.20518–19). By then, it had been a year and a half since the Sixth Circuit issued the limited remand as to Gordon, and Section 404 motions "on nearly identical grounds" by Polk, Dale, and Brown remained pending. (ECF No. 2541, Eligibility Order, PgID.20522).

The Court recognized that Section 404 does not authorize reduced sentences for § 848(e) homicides. (ECF No. 2541, Eligibility Order, PgID.20530). Nonetheless, it concluded that the defendants are "otherwise" eligible for relief, even for their non-covered homicide offenses, because "a covered offense," the drug conspiracy, "is involved." (ECF 2541, Eligibility Order, PgID.20530–32). The Court did not say whether the consecutive § 924(c) sentences were also "otherwise" eligible for reduction. Given the passage of time, the Court requested updated presentence reports "to determine the extent of the relief" it should order. (ECF 2541, Eligibility Order, PgID.20538).

## Argument

### A. There is discretion to grant relief under Section 404 on some, but not all, counts.

The Court is considering whether to reduce each defendant's "total sentence" because "a covered sentence is involved." (ECF No. 2541, Eligibility Order, 20531). Although the government acknowledges the Court's previous ruling, the government maintains that the authority to order a sentence reduction here is limited in several respects.

First, as to Gordon, the Sixth Circuit issued only a limited remand, vacating his sentence "only as to Count 1," the covered drug

9

conspiracy, and found him eligible for a reduction only to "the sentence that he received on Count 1." (ECF No. 2455, Sixth Circuit Order in *United States v. Gordon*, No. 19-1739 (6th Cir. Jan. 14, 2021), PgID.19474–75). Reducing Gordon's total sentence would therefore violate the mandate rule. *In re Purdy*, 870 F.3d 436, 442–43 (6th Cir. 2017); *United States v. Mendez*, 498 F.3d 423, 426 (6th Cir. 2007); *United States v. O'Dell*, 320 F.3d 674, 679 (6th Cir. 2003).

Second, Section 404 does not permit reducing the defendants' § 924(c) sentences. Those convictions were driven by the mandatory minimums in place at the time of sentencing. Although Section 403 of the First Step Act changed those mandatory minimums going forward, the new minimums apply only "if a sentence for the offense has not been imposed as of" December 21, 2018, the date of the First Step Act's enactment. Based on this language, the Sixth Circuit has held that the new mandatory minimums do not even apply at a full resentencing. *United States v. Jackson*, 995 F.3d 522, 525–26 (6th Cir. 2021). And although the Department of Justice believes that the Sixth Circuit's approach is too restrictive and instead favors the approach adopted by other circuits, *see* Gov't Brief in *United States v. Carpenter*, 6th Cir. No.

10

22-1198, the government is not aware of any court of appeals decision holding that the new § 924(c) minimums apply in a Section 404 sentence-modification proceeding. Especially given *Jackson*, then, the defendants' § 924(c) sentences are not eligible for reduction. *Cf. Concepcion v. United States*, 142 S. Ct. 2389, 2402 n.6 (2022) (permitting consideration of legal developments for *eligible* offenses).

Third, the "sentencing package" doctrine does not apply, so the defendants' non-covered offenses are not otherwise eligible on that theory. Congress granted authority to "impose a reduced sentence as if" the Fair Sentencing Act had been in effect when the covered offense was committed. Sec. 404(b), 132 Stat. at 5222. The phrase "impose a reduced sentence" clarifies that courts are not limited to reducing "the sentence" for the covered offense but may also reduce the sentence of interdependent non-covered offenses that, together with the covered offense, form a sentencing package. But courts are not authorized to reduce sentences for stand-alone non-covered offenses, like the homicides and § 924(c) offenses here, none of which grouped with the drug conspiracy. *See United States v. Hudson*, 967 F.3d 605, 610–11 (7th Cir. 2020) (holding that courts can reduce sentences on "non-

covered offenses that are grouped with covered offenses to produce the aggregate sentence"); USSG § 3D1.2 (excluding homicides from grouping); USSG § 3D1.1(b)(1) (excluding § 924(c) from grouping).

As for the murder sentences, they have "no mutual exclusivity nor any interdependence" with the other sentences that would implicate "the sentencing package doctrine." *United States v. Sumler*, No. 95-154-2, 2021 WL 6134594, at *17–19 (D.D.C. Dec. 28, 2021) (internal quotation marks omitted); *see also Sanchez v. United States*, 2021 WL 5234978, at *4 (S.D.N.Y. Nov. 10, 2021). Even for crimes that are themselves related (as when murder furthers a drug conspiracy), that does not make the resulting *sentences* interdependent. The murder sentences here, for example, were not "contingent upon the calculated offense level of [the drug conspiracy]" and did not influence the defendants' sentences on that count. *United States v. Martin*, 974 F.3d 124, 135 n.11 (2d Cir. 2020). As for the consecutive § 924(c) terms, those were required by statute, irrespective of other sentences, so "the package theory" does not apply to those offenses either. *United States v. Thompson*, 846 F. App'x 816, 818 (11th Cir. 2021).

12

The concept of "plenary resentencing" comes into play only at the discretionary phase, after eligibility is established on each count. *See United States v. Maxwell*, 991 F.3d 685, 692 (6th Cir. 2021) (involving one covered offense and holding that courts are permitted but not required to consider intervening legal developments in balancing the § 3553(a) factors); *see also United States v. Gravatt*, 953 F.3d 258, 262 (4th Cir. 2020) (also involving one covered offense). A covered offense does not, by itself, expand eligibility to all non-covered offenses included in the same judgment as the covered offenses.

The Supreme Court, in *Concepcion v. United States*, 142 S. Ct. 2389 (2022), did not expand eligibility either. *Concepcion*, like *Maxwell*, concerned the scope of a district court's discretion to impose a reduced sentence on a single covered offense for which Section 404 eligibility was already established. *Concepcion*, 142 S. Ct. at 2397; *see also United States v. Jenkins*, 50 F.4th 1185, 1200 (D.C. Cir. 2022); *United States v. Peoples*, 41 F.4th 837, 842 (7th Cir. 2022). Accordingly, the defendants are eligible for a reduced sentence only for the covered drug conspiracy.

13

**B.    The guideline ranges and § 3553(a) factors weigh strongly against any sentence reductions.**

Even for the covered offense (or if the Court disagrees with the government's eligibility argument regarding the non-covered offenses), the Court should decline to exercise its discretion to reduce the defendants' sentences. Discretionary relief can be granted only if and to the extent supported by the § 3553(a) factors.

Here, for all defendants, those factors weigh against a sentence reduction of any length. The First Step Act did not alter their guidelines, which still call for life imprisonment for both the conspiracy and all homicide offenses. Other intervening changes in law do not provide a compelling reason to reduce their sentences either, especially on the murder counts. The defendants, moreover, are not elderly. They are still in their early 50s, and the sentencing judge and victims' families expected that the defendants would likely serve several decades more in prison, given the seriousness of their offenses. That seriousness continues to weigh strongly in favor of life sentences and at the very least rebuts the defendants' requests for lengthy reductions.

14

### 1.    The benchmark guidelines are still life imprisonment.

When considering a sentence modification under Section 404, courts must recalculate the guidelines "as if" the Fair Sentencing Act's amendments were in effect, but the guidelines should not be adjusted in any other way. *Concepcion*, 142 S. Ct. at 2402 n.6. Here, those amendments do not impact the guidelines for the drug conspiracy because the offense level still hinges on the murders, not drug quantity. *See* USSG §§ 2A1.1(a), 2D1.1(d)(1). And of course, the Fair Sentencing Act's amendments have no impact on the guidelines for the non-covered homicides and § 924(c) offenses. So, the benchmark guidelines are unchanged: life imprisonment for the drug conspiracy and homicides, plus the mandatory minimums in effect at the time of sentencing for the § 924(c) offenses. Moreover, the adjusted offense level of each defendant exceeds 43, the level that corresponds to a guideline range of life, and totals either 45 or 47 depending on how many homicide convictions the defendant has. (*See, e.g.*, Polk PSR ¶¶ 58–68).

### 2.    Intervening changes in law do not support relief.

In addition to recalculating the guidelines, the Court must consider arguments that intervening changes in law support a sentence

reduction, but it also remains free to reject those arguments as uncompelling, particularly when balanced against other considerations. *See Concepcion*, 142 S. Ct. at 2404–2405. Here, the Court has already identified certain changes in law to consider, including *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *United States v. Booker*, 543 U.S. 220 (2005). Neither provides support for a reduction here.

Under *Apprendi*, "any fact," such as drug quantity, "that increases the penalty for a crime beyond the prescribed statutory maximum must [now] be submitted to a jury." *Apprendi*, 530 U.S. at 490. But here, regardless of the drug quantities involved in the conspiracy, the jury made all the necessary findings to support the defendants' *homicide* convictions, which also carry life sentences. Those stand-alone homicide sentences make any *Apprendi*-based argument for reducing their drug conspiracy sentences inconsequential and thus not compelling.

As for drug quantities, the Department of Justice supports elimination of the crack-to-powder disparity, but it is pure speculation to believe that this policy would result in shorter sentences today for the defendants' drug conspiracy. The defendants were charged and tried before *Apprendi*, before changes to the guidelines, and before the Fair

Sentencing Act. Because the guideline range for the drug conspiracy was already as high as it could be based on the homicides, there was little reason back then to show that the offense involved more and more crack or powder cocaine. The record, moreover, shows drug quantities for each defendant that surpass 5 kilograms of cocaine or 280 grams of crack cocaine, as needed today to trigger § 841(b)(1)(A)'s penalties.

**Gregory Brown:**  Brown was held responsible for 3 kilograms of cocaine and between 50 and 150 grams of crack cocaine (Brown PSR ¶ 32), but the record shows more, including weekly deliveries of between 1 and 4.5 ounces of crack cocaine for a period of six or seven months (Brown PSR ¶ 30). Those deliveries conservatively total well over 600 grams of crack cocaine, more than twice the current threshold.

**Edward Dale:**  Dale was among those who received "kilogram quantities of cocaine" from Stacey Culbert. (Dale PSR ¶ 16). Dale, along with Culbert, received a kilogram of cocaine as partial payment for murder. (Dale PSR ¶ 21). Dale was held responsible for 1.5 kilograms of crack cocaine, more than five times the quantity currently needed to trigger penalties under § 841(b)(1)(A), and between 1 and 3 kilograms of cocaine on top of that. (Dale PSR ¶ 23).

17

**John Gordon:**  Gordon also received "kilogram quantities of cocaine" from Stacey Culbert. (Gordon PSR ¶ 19). As a distributor in New York, he received shipments ranging from 93 kilograms to 498 kilograms of cocaine. (Gordon PSR ¶ 23). A kilogram of cocaine that he brought to Detroit was converted into crack cocaine. (Gordon PSR ¶ 24). Gordon was "held responsible for at least 50 kilograms of cocaine," ten-fold the threshold amount of cocaine needed to trigger § 841(b)(1)(A)'s penalties if tried today, "and/or at least 500 grams of cocaine base," nearly twice the amount of crack needed for those same penalties. (Gordon PSR ¶ 30).

**Gene Polk:**  Polk sold crack cocaine for years and opened "crack houses" for the Best Friends. (Polk PSR ¶ 26). He was there when Charles Wilkes, another distributor, purchased two kilograms of crack cocaine, and Polk was aware of most of Wilkes's drug activities. (Polk PSR ¶ 26). Polk was held responsible for over 1.5 kilograms of crack cocaine, more than five times the threshold amount of crack cocaine currently needed to trigger § 841(b)(1)(A) penalties. (Polk PSR ¶ 26).

Considering the record in this way is important when speculating about a counterfactual world in which a then-unavailable precedent is

18

treated like an available one. Courts cannot determine what "impact . . . *Apprendi* would have had," *United States v. Ware*, 964 F.3d 482, 488 (6th Cir. 2020), combined with current drug-quantity thresholds, without also considering how the record might have developed and whether a jury would have made the now-required and since-increased quantity findings had it been asked. The defendants participated in a massive drug conspiracy involving kilogram-quantity exchanges that spanned a decade and covered ten states. It is telling that today's thresholds for life imprisonment are satisfied on this record, *despite* that those markers did not exist when the record was developed. Accordingly, *Apprendi* is not a compelling reason to reduce the defendants' sentences on the drug conspiracy.

*Booker* does not tip the scales either. That case simply holds that the guidelines are no longer mandatory. *See Booker*, 543 U.S. at 264. Congress, in passing the First Step Act, gave courts discretion to reduce otherwise final sentences for eligible offenses, including sentences that were mandatory, so *Booker* does not add anything to the inquiry that isn't already there. The question is not whether a court *can* impose a reduced sentence for eligible offenses, but rather whether it *should*.

19

Particularly given the seriousness of the murder offenses—and, in some instances, multiple murders—the mere availability of discretion is not a compelling reason to vary below the guidelines, which still call for life imprisonment for the drug conspiracy and homicides. *See United States v. Boyd*, 835 F. App'x 88, 92–94 (6th Cir. 2020) (upholding decision not to reduce life sentence where the guidelines were not affected by the First Step Act and were independently driven by the homicides).

### 3.      There are no unwarranted sentencing disparities.

The defendants may ask the Court to consider the disparity between their life sentences and the shorter sentences of some of their codefendants. 18 U.S.C. § 3553(a)(6). But doing so would be improper. That "factor concerns *national* disparities between defendants with similar criminal histories convicted of similar criminal conduct—not disparities between codefendants." *United States v. Bass*, 17 F.4th 629, 636 (6th Cir. 2021) (internal quotation marks omitted).

Further, as the Court explained less than a year ago, the codefendants with shorter sentences, including Stacey Culbert, "pleaded guilty and cooperated." (ECF No. 2514, Order Denying Compassionate Release, PgID.20179). Sentencing disparities are relatively common

when some defendants cooperate and accept responsibility while others

do not. *United States v. Stewart*, 628 F.3d 246, 260 (6th Cir. 2010);

*United States v. Conatser*, 514 F.3d 508, 522 (6th Cir. 2008). Here, it

appears that Culbert pleaded guilty to two homicides and two § 924(c)

offenses, agreed to a minimum sentence of 50 years, had that sentence

reduced by providing substantial assistance to the government, and

perhaps also earned good-time credit in prison. (ECF No. 1156-1,

Culbert Rule 11, 19567–19575). There is simply no disparity here

among similarly situated codefendants—i.e., those "who also were

convicted at trial of intentional killings and also received life sentences

due to the seriousness of their crimes." (ECF No. 2514, Order Denying

Compassionate Release, PgID.20179).

### 4. Individual considerations under § 3553(a) do not warrant any sentence reduction.

The Court must also consider individual circumstances under

§ 3553(a). But in the most critical ways, these four men are the same:

convicted murderers who have not yet served most of their sentences.

**Gregory Brown**:  Brown has been in prison for about 27 years,

including jail credit. Accounting for his § 924(c) sentence, he is about 22

years into his life sentences. Brown's last misconduct was possessing a

dangerous weapon in 2007, he earned his GED in prison, and he has completed a number of educational courses. (Ex. 1, Brown Select BOP Records). Yet these considerations are easily offset by the seriousness of his offenses. In the eyes of the law, Brown's role in killing Walter Daniels was no less serious than had he been the triggerman, and it was not unjust for him to be punished accordingly. At just 50 years old, Brown should spend his long-remaining life behind bars.

**Edward Dale:**  Dale has been incarcerated for less than 28 years, including jail credit. Because 25 of those years were for his § 924(c) offenses, he has served only roughly three years of his four concurrent life sentences. He has been discipline-free for more than a decade, earned his GED in prison, and completed a number of courses. (Ex. 2, Dale Select BOP Records). But his achievements pale in comparison to the seriousness of his offenses, including a massive drug conspiracy and three homicides. And they did not support a sentence reduction less than a year ago. As the Court recognized then, "when the crime is murder and the death penalty is an option, as here, the seriousness of the offense . . . carries considerable, if not preemptive, weight." (ECF No. 2514, Order Denying Compassionate Release, PgID.20182 (citing

*Bass*, 17 F.4th 629)). At 53 years old, and having killed three victims, Dale does not deserve a shortened sentence.

**John Gordon:**  Gordon has been incarcerated for less than 28 years, including jail credit. Accounting for his § 924(c) sentence, he has served less than 23 years of his two life sentences. Gordon suffers from chronic kidney disease and hypertension and has a history of blood clots, among other serious conditions. (ECF No. 2486, Sixth Circuit Order in *United States v. Gordon*, No. 20-2225 (6th Cir. Oct. 4, 2021), PgID.20049). He has a few misconduct violations in recent years, including insolence in 2017 and failing to follow safety regulations in 2019. He earned his GED in prison and has completed about 43 courses. (Ex. 3, Gordon Select BOP Records). Yet Gordon's circumstances did "not favor a sentence reduction" just two years ago. (ECF No. 2425, Order Denying Compassionate Release, PgID.18997). Nor do they today. "Congress . . . determined that crimes like intentional murder should carry a mandatory life sentence," and Gordon's prison record, while "commendable," "does not alter the historical fact" that "undoubtedly," his life sentence "was not greater than necessary to achieve congressional goals" of sentencing. (ECF No. 2425, Order

Denying Compassionate Release, PgID.18997). Just shy of his 51st birthday, and having committed at least one murder, Gordon does not deserve to be a free man, let alone several decades early.

**Gene Polk:**  Polk has been incarcerated for less than 28 years, including jail credit. That accounts for only about two-thirds of his 45-year term for his § 924(c) offenses, and he has not yet begun serving his four concurrent life sentences. Polk also has a troubling prison record. He possessed a dangerous weapon five times, most recently in 2021; he possessed drugs/alcohol twice, most recently in 2021; he refused to obey orders more than a dozen times, most recently in 2013; he refused his work assignment more than a dozen times, most recently in 2012; he engaged in fighting in 2010; and he assaulted an officer in 1997. He has completed nine courses but dropped his GED course in 1998, with no progress since. (Ex. 4, Polk Select BOP Records). At 52 years old, Polk is not deserving of a sentence reduction.

For all the defendants, the Court should consider the public's interest in having violent criminals serve out their sentences. The "paramount" goal of sentencing in this case was "protection of the public." (ECF No. 2514, Order Denying Compassionate Release, 18997).

24

Releasing convicted murderers early would endanger the community.
The murders here were not isolated, they did not stem from a
temporary lapse in judgment, and the defendants are far from too old to
do it again. Their life sentences, especially for the murders, were "not
greater than necessary" to achieve the goals of sentencing, and to
reduce them now would not reflect the seriousness of their offenses,
promote respect for the law, provide just punishment, or deter others.
(ECF No. 2514, Order Denying Compassionate Release, 18997).

## Conclusion

For these reasons, only the covered drug conspiracy is eligible for
reduction under Section 404, and, in any event, a reduction to any of the
defendants' sentences is inappropriate considering the § 3553(a) factors.

Respectfully submitted,

DAWN N. ISON
United States Attorney

s/ Jessica V. Currie
s/Benjamin C. Coats
Jessica V. Currie
Benjamin C. Coats
Assistant U.S. Attorneys
211 W. Fort St., Suite 2001
Detroit, MI 48226
(313) 226-9531
Dated: November 23, 2022      jessica.currie@usdoj.gov

25

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 23, 2022, I electronically filed the foregoing document with the Clerk of the Court for the Eastern District of Michigan using the ECF system, which will send notification of the filing to all users of record.

<i>s/Jessica V. Currie</i>
Jessica V. Currie
Assistant U.S. Attorney